**IN THE COURT OF APPEALS OF IOWA**

No. 18-1969
Filed March 20, 2019

**IN THE INTEREST OF A.V.,**
**Minor Child,**

**K.H., Mother,**
　　　Appellant.
_____


　　　Appeal from the Iowa District Court for Linn County, Barbara H. Liesveld, District Associate Judge.


　　　A mother appeals the termination of her parental rights.  **AFFIRMED.**


　　　Judith Jennings Hoover of Hoover Law Office, P.C., Cedar Rapids, for appellant mother.

　　　Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

　　　Julie F. Trachta of Linn County Advocate, Inc., Cedar Rapids, attorney and guardian ad litem for minor child.


　　　Considered by Potterfield, P.J., Tabor, J., and Danilson, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**DANILSON, Senior Judge.**

A mother appeals the order terminating her parental rights pursuant to Iowa Code section 232.116(1)(h) (2018). The mother concedes the first three subsections have been established because the child is three years old or younger, has been adjudicated a child in need of assistance (CINA), and has been out of the parent's custody for at least six consecutive months. *See* Iowa Code § 232.116(1)(h)(1)–(3). She argues, however, the State has failed to prove by clear and convincing evidence the child cannot be returned to her custody at the present time or within a reasonable extension of time. *See id.* § 232.116(1)(h)(4). She contends the two-month suspension of visits constitutes a failure to make reasonable efforts to reunify the mother and child. Further, she asserts the bond between mother and child provides a basis to avoid termination under section 232.116(3)(c).

The child, A.V., was born in April 2017. She first came to the attention of the department of human services (DHS) in July when her father left her in a car unattended and a child-abuse assessment referral was made.[1] Another assessment referral was made when the parents gave the child Benadryl and put her to bed face down on a pillow; she became unresponsive and was hospitalized. In addition, the child has been involved in one of the couple's domestic disputes. Another abuse assessment was completed in December when the child was repeatedly hospitalized due to the parents' failure to follow through with needed medication for the child's ear infections. The child was diagnosed failure to thrive

---

[1] The father's rights were also terminated; he has not appealed.

and was removed from the parents' custody on December 14. The child was adjudicated CINA on December 19 and was placed in foster care. The child was severely underweight at the time she was removed from her parents' care.

Visitation with the parents, which had been scheduled for three, one-hour visits per week, was suspended from June through July 2018 at the request of the child's primary physician. On June 19, the child's physician wrote that she had cared for the child since November 14, 2017. The physician expressed concern for the child:

> When I assumed care for [A.V.] she was struggling with gaining weight and growing appropriately. She was having trouble meeting her developmental milestones. There were apparent parenting issues witnessed by me at her appointments. . . .
> During the entire time of my care for [A.V.] since this time, feeding has been an issue and constant struggle. Part of her feeding issue is oral feeding refusal. She had been evaluated by speech therapy during one of her hospitalizations early in life, however, at [one] year of age, [A.V.] was starting to refuse feedings by mouth. I then had her start regular visits with a speech therapist on an outpatient basis to assist with what seemed to be oral aversion.
> This letter is to detail my concern for [A.V.] with parental visitations. . . . [The child] recognizes and cries when she sees the DHS worker who takes her to her regular parental appointments. There is a specific car seat she uses to visit her parents and will cry when put in that seat specifically. Her parents often cancel or do no show for visitations, so [A.V.] does not visit with them consistently. However, she is consistent with her behavior following visitations with her biological parents and I feel this is becoming a detriment to her physical and mental health. Visits with parents are described as "volatile" as witnessed by the speech therapist after they attended an appointment and she had great concerns and came to me personally.
> As of June 5, 2018, oral aversion has been ruled out as a diagnosis for [A.V.] by her speech therapist as she has varied eating acceptance in relation to parental visits and her feeding therapy has been put on hold. I and [the] speech therap[ist] have reached out to a psychiatrist to ask for therapies and to date, this has been hard for me to accomplish due to [A.V.'s] young age. There does seem to be a psychological relation to [A.V.] not eating and her concerning behavior with the time of the biological parents' visitation.

. . . .

I would like to recommend that visits with biological parents be suspended at this time to allow [A.V.] to be evaluated by psychiatry and allow her to maintain a healthy relationship with eating and food so that she can grow and thrive. I have strong concerns about her emotional well-being given her intense reactions to food and restless sleep following visits.

At the time of the termination hearing in September 2018, the child had been out of the mother's custody for about nine months. The mother contends she has "worked on the case plan expectations and made progress in meeting the case plan goals." While we acknowledge the mother made some small progress, especially after visits had been suspended and during the five weeks prior to the termination hearing, her visits with the child remain fully supervised. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) ("A parent cannot wait until the eve of termination, after the statutory time periods for reunification have expired, to begin to express an interest in parenting."). The mother had been inconsistent in attending visits she was provided prior to suspension (attending forty-five of seventy-four). She has not followed through with recommended substance-abuse treatment. She has not demonstrated an ability to consistently feed her child without coaching and guidance. She has not demonstrated that she understands her child's medical and psychological needs. In addition, the mother and the father remain together and had just recently begun to attend counseling to address their domestic relationship. The father has mental-health issues for which he takes medications. He has anger-management issues.[2] He is employed but works from home because he is overanxious and hyper-vigilant around others. He is resistant

---

[2] The father has a concealed carry permit, possesses a firearm, and has threatened DHS he would use it. At one visit, the firearm was on the table.

to services.  We find there is clear and convincing evidence the child cannot be returned to the mother's care without risk of harm.

The mother contends the State failed to make reasonable efforts at reunification and she should be granted additional time because her visits had been suspended.  As set out above, visits were suspended based on the concerns of the child's pediatrician.  The first and foremost consideration in these juvenile proceedings is the child's best interests.  *Id.* at 492.  We find DHS has made reasonable efforts to achieve reunification, but the mother has not sufficiently responded to those services in order to have the child returned to her care.

We do not believe an extension of time is warranted.  *See* Iowa Code § 232.104(2)(b) (requiring that in order to extend time the juvenile court make a determination the need for removal will no longer exist at the end of the extension).  Nor do we find the bond between the mother and this young child who has been out of parental custody for many months weighs against termination of parental rights.  *See* Iowa Code § 232.116(3)(c) (allowing court to not terminate a parent child relationship where "[t]here is clear and convincing evidence that termination would be detrimental to the child at the time due to the closeness of the parent-child relationship"); *see also In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014) (noting the factors of section 232.116(3) "are permissive, not mandatory" (citation omitted)).  We affirm the termination of the mother's parental rights.

**AFFIRMED.**